**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CATHERINE C DE BACA,

       Plaintiff,

vs.                                           No. CIV 17-1161 JB\KK

UNITED STATES OF AMERICA,

       Defendants.

<u>Consolidated with:</u>

GERALD OHLSEN; JANET
YOUNGBERG; JAMES FARRINGTON;
TONY and CARYN DEROCHIE;
WILLIAM and DONNA MCCLELLAN;
NANCY HIGGINS; VERNON and
BINDA COBB; CHRISTINE WOOD;
MARK THOMPSON; DONALD GILES
and BONNIE LONG; THOMAS and
DIANE BRAGG; ERNEST and FRIEDA
VIGIL; BRAD WOSICK; JOHNNY and
DEANNE LUNA; MARLENE BARBER;
MICHAEL MCDANIEL and PAULA
WILTGEN, and MARTIN VALENCIA,

       Plaintiffs,

vs.                                           No. CIV 18-096 JB\KK

UNITED STATES, and DOES 1-10,

       Defendants.

<u>Consolidated with:</u>

STATE FARM FIRE & CASUALTY
CO., and SAFECO INSURANCE
COMPANY OF AMERICA,

        Plaintiffs,

vs.                                No. CIV 18-0367 JB\KHR

UNITED STATES, and DOES 1-10,

        Defendants.

<u>Consolidated with:</u>

DAVID LLOYD SAIS; LUCILLE SAIS;
TOMAS APODACA, and CHRISTINE
APODACA,

        Plaintiffs,

vs.                                No. CIV 18-0496 JB\JHR

UNITED STATES OF AMERICA, and
DOES 1-10,

        Defendants.

Consolidated with:

HOMESITE INDEMNITY COMPANY
a/s/o DON GILES and BONNIE LONG,

       Plaintiff,

vs.                                                                                           No. CIV 17-1233 JB\SCY

UNITED STATES; UNITED STATES
DEPARTMENT OF AGRICULTURE;
UNITED STATES FOREST SERVICE;
NATURAL RESOURCES
CONSERVATION SERVICE, and
BUREAU OF INDIAN AFFAIRS,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant's Emergency Motion for a Partial Stay of Discovery and Memorandum in Support, filed November 6, 2018 (Doc. 66)("Motion"). The Court held a hearing on November 21, 2018. See Clerk's Minutes at 1, filed November 21, 2018 (Doc. 84). The primary issue is whether the Court should stay discovery pending the Court's decision on the United States of America's Motion to Dismiss Claims for Lack of Subject Matter Jurisdiction or in the Alternative for Partial Summary Judgment, and Memorandum in Support, filed November 2, 2018 (Doc. 60)("First MTD"); the United States of America's Motion to Dismiss *Ohlsen* Plaintiffs' Second Amended Complaint Due to Lack of Subject Matter Jurisdiction, filed November 2, 2018 (Doc. 62)("Second MTD"); the United States of America's Motion to Dismiss Plaintiff Catherine C De Baca's Amended Complaint and Gary Cianchetti's Complaint Due to Lack of Subject Matter Jurisdiction, filed November 5, 2018 (Doc. 64)("Third MTD"); and the United States of America's Motion to Dismiss Plaintiffs Sais, Apodaca and

Sorroche's Amended Complaint Due to Lack of Subject Matter Jurisdiction, filed November 15, 2018 (Doc. 80)("Fourth MTD")(collectively, "the MTDs"). The Court concludes that, because staying discovery would impede the Plaintiffs' ability to respond to the MTDs, the Court will deny the Motion and will allow discovery to continue.

## FACTUAL BACKGROUND

The Court has consolidated C De Baca v. United States of America, No. 17-1661 JB\KK; Cianchetti v. United States of America, No. CIV 17-1186 JB\KK; Ohlsen v. United States of America, No. CIV 18-0096 JB\KK; State Farm Fire and Casualty Co. v. United States, No. CIV 18-0367 JB\KK; Homesite Indemnity Co. v. United States, No. CIV 17-1233 JB\SCY; and Sais v. United States, No. CIV 18-0496 JB\JHR. See Order Granting Unopposed Motion to Consolidate at 1, filed June 5, 2018 (Doc. 20); Order Granting Motion to Consolidate at 2, filed November 5, 2018 (Doc. 69). The Court takes its facts from the Plaintiff's Amended Complaint for Negligence Arising Under the Federal Tort Claims Act, filed November 27, 2017 (Doc. 5)("C De Baca Amended Complaint"); Plaintiff's Complaint for Negligence Arising Under the Federal Tort Claims Act, filed May 3, 2018 (Doc. 18-1)("Cianchetti Complaint"); Ohlsen Plaintiffs' Second Amended Complaint, filed August 15, 2018 (Doc. 38)("Ohlsen Second Amended Complaint"); and Amended Complaint, filed November 13, 2018 (Doc. 78)("State Farm Amended Complaint"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely the Plaintiffs' version of events.

In 2016, the United States of America Forest Service ("Forest Service") contracted with the Isleta Pueblo to thin the Cibola National Forest, south of Albuquerque in the State of New Mexico. See State Farm Amended Complaint ¶ 11, at 4; id. ¶ 15, at 5. The Forest Service

supervised the forest thinning project as "part of a cooperative agreement known as the 'Isleta Collaborative Landscape Restoration Project,'" which was undertaken by eleven "government agencies including the USFS, the Natural Resource Conservation Service . . . , and the Bureau of Indian Affairs." State Farm Amended Complaint ¶¶ 12-13, at 4-5. The Forest Service directed and controlled the Isleta Pueblo's work. See State Farm Amended Complaint ¶ 17, at 5.

The Isleta Pueblo thinning crew used "a masticator[1] to shred brush and trees into mulch." C De Baca Amended Complaint ¶ 12, at 2. Masticators can "potentially ignite wildfires through sparks generated when the metal head strikes against rock." State Farm Amended Complaint ¶ 18(c), at 6. The Isleta Pueblo undertook the thinning in an area containing "logging slash[2] and a high quantity of forest fuels," C De Baca Amended Complaint ¶ 13, at 2-3, and "during a drought and in hot, dry, and windy conditions during the New Mexico fire season," Ohlsen Second Amended Complaint ¶ 17, at 5. The masticator either "was not in proper working order, or was not the proper equipment for the terrain," and, on June 14, 2016, sparks from the masticator ignited a forest fire. C De Baca Amended Complaint ¶¶ 14-16, at 3; id. ¶ 17, at 3.

The forest fire became known as the "Doghead Fire." C De Baca Amended Complaint ¶ 17, at 3. The Doghead Fire burned "out of control," C De Baca Amended Complaint ¶ 17, at 3, and "spread to neighboring properties," State Farm Amended Complaint ¶ 11, at 4. The Isleta Pueblo thinning crew "was not adequately trained or equipped to prevent or immediately suppress

---

[1]A "masticator," or a "mulcher" or "brushcutter," uses rotating metal blades to "cut and chop or grind vegetation into particles that are usually left on-site as mulch." Mulchers, U.S. Forest Serv., https://www.fs.fed.us/forestmanagement/equipment-catalog/mulchers.shtml (last visited Jan. 3, 2019). See Ohlsen Second Amended Complaint ¶ 18, at 5.
[2]The Forest Service defines "slash" as: "Woody material or debris left on the ground after an area is logged." See Glossary of Forest Engineering Terms, Southern Res. Station, U.S. Forest Serv., https://www.srs.fs.usda.gov/forestops/glossary/#S (last visited Jan. 19, 2019).

a fire, and made no attempt to immediately suppress the fire." Ohlsen Second Amended Complaint ¶ 19, at 5. The Forest Service, "New Mexico State Forestry, Bureau of Indian Affairs, and Bureau of Land Management shared command of the fire," and the Forest Service "declined to allow first responders to put out the initial fire." C De Baca Amended Complaint ¶ 16, at 3; id. ¶ 18, at 3. On the Doghead Fire's second day, "evacuations were ordered of all residences and business in the line of fire." C De Baca Amended Compliant ¶ 22, at 3. The Doghead Fire destroyed twelve residences and forty-four structures "in and near" Chilili, New Mexico. C De Baca Amended Complaint ¶ 21, at 3. The Plaintiffs' properties were among the property destroyed. See C De Baca Amended Complaint ¶ 29, at 4; Cianchetti Complaint ¶¶ 25, 28, at 6; Ohlsen Second Amended Complaint ¶ 1, at 1; State Farm Complaint ¶ 19, at 6.

## PROCEDURAL BACKGROUND

At a July 6, 2018, hearing before the Honorable Kirtan Khalsa, United States Magistrate Judge for the District of New Mexico, Defendant United States requested a discovery stay until the Court decides "all dispositive motions" that the United States plans to file. Clerk's Minutes at 1, filed July 6, 2018 (Doc. 28). Magistrate Judge Khalsa denied the United States' request and informed the United States that, after filing its dispositive motions, it could file a motion to stay discovery. See Clerk's Minutes at 1. On November 2, 2018, the United States filed the First MTD, arguing that, because the Isleta Pueblo thinning crew were independent contractors, the Court should dismiss all the Plaintiffs' claims under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Evidence, and, in the alternative, seeking a partial summary judgment. See First MTD at 1-2. The same day, the United States filed the Second MTD, seeking dismissal under 12(b)(1) of the Ohlsen v. United States of America Plaintiffs' claims, because the Ohlsen v. United States of America

Plaintiffs' failed to exhaust their administrative remedies, and because the discretionary-function and independent-contractor exceptions bar their claims. See Second MTD at 27. On November 5, 2018, the United States filed the Third MTD, arguing that the Court should dismiss, under rule 12(b)(1), Plaintiff Catherine C De Baca's claims, because she failed to exhaust administrative remedies and because the discretionary-function and independent-contractor exceptions bar her claims. See Third MTD at 15. The next day, November 6, 2018, the United States filed the Motion. See Motion at 6. On November 15, 2018, the United States filed another dispositive motion -- the Fourth MTD, seeking the dismissal, under rule 12(b)(1) of the Sais v. United States Plaintiffs' claims because the Sais v. United States Plaintiffs failed to exhaust administrative remedies, and because the discretionary-function and independent-contractor exceptions bar the Plaintiffs' claims. See Fourth MTD at 18.

      1.      **The Motion.**

The United States asks the Court to partially stay discovery pending the Court's resolution of the First MTD, Second MTD, and Third MTD. See Motion at 1. The United States argues that a stay is appropriate, because the United States has filed dispositive motions challenging the Court's subject-matter jurisdiction. See Motion at 2-3 (citing Stonecipher v. Valles, 759 F.3d 1134, 1148 (10th Cir. 2014); Moore v. Busby, 92 F. App'x 699, 702 (10th Cir. 2004)(unpublished); Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 804 (Fed. Cir. 1999); Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth., 201 F.R.D. 1, 3 (D.D.C. 2001)(Robinson, J.)). The United States contends that the Federal Tort Claims Act, 28 U.S.C. §§ 1291, 1346, 1402, 2401-02, 2411, 2412, 2671-80 ("FTCA"), exceptions are jurisdictional and that, before the Court reaches the case's merits, the Court must decide the

jurisdictional issues. See Motion at 3 (citing Farmer v. Banco Popular of N. Am., 791 F.3d 1246, 1254 (10th Cir. 2015); Garcia v. U.S. Air Force, 533 F.3d 1170, 1175 (10th Cir. 2008); Edwards-Flynn v. Yara, No. CIV 08-0186 JB/ACT, 2009 WL 1588687, at *3 (D.N.M. May 27, 2009)(Browning, J.)). The United States avers that, if the Court declines to grant the stay and the United States succeeds on the First, Second, and Third MTDs, the parties "will incur significant time and expense in discovery." Motion at 4 (citing Coastal States Gas Corp. v. Dep't of Energy, 84 F.R.D. 278, 282 (D. Del. 1979)(Schwartz, J.)). The United States continues that a stay will not prejudice the Plaintiffs, because the Plaintiffs have already benefited from considerable discovery -- production of "over 6,000 pages of documents" and seven depositions -- and because the Plaintiffs do not yet require discovery on the merits. Motion at 4. Finally, the United States notes that the Plaintiffs' most recent request to depose an Isleta Pueblo employee would likely not reveal information related to the First, Second, and Third MTDs MTDs. See Motion at 5. The United States admits in a footnote that the deposition of Anthony Martinez, the "Fire Management Officer for the Mountainair Ranger District, Cibola National Forest and National Grasslands, is relevant to the MTDs." Motion at 2 n.1.

## 2. **The Response.**

On November 20, 2018, the Plaintiffs responded. See Plaintiffs' Joint Response in Opposition to Defendant's Emergency Motion for a Partial Stay of Discovery at 12, filed November 20, 2018 (Doc. 82)("Response"). The Plaintiffs note that they have "already agreed to a stay of damages discovery" but ask that the Court not stay discovery on the merits regarding liability. Response at 1. First, the Plaintiffs contend that the United States bears the "difficult burden" of proving its need for a stay and that it has not shown this need. Response at 2-3 (citing

Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936); Saenz v. Lovington Mun. Sch. Dist., No. CIV 14-1005 JB/SMV, 2015 WL 1906140 (April 6, 2015)(Browning, J.)).  According to the Plaintiffs, the United States has stated only that a stay will save the parties time and expenses.  See Response at 3.  The Plaintiffs contend that this statement does not identify specific harms that the United States will experience if the Court denies a discovery stay, and that the discovery that the Plaintiffs seek "will not be expensive or burdensome."  Response at 3.

Second, the Plaintiffs contend that, after Magistrate Judge Khalsa denied the United States' request for a stay, the United States has not cooperated in discovery.  See Response at 3-4.  The Plaintiffs argue that the United States refused to cooperate in setting dates for depositions and, that without the United States' reluctance to set dates for the depositions, the Plaintiffs would have completed the depositions by this time.  See Response at 4-5.  The Plaintiffs also aver that, although the Plaintiffs requested work prescriptions for the Isleta Pueblo thinning crew in July, 2018, the United States waited until November, 2018, to produce the work prescriptions.  See Response at 5.  The Plaintiffs contend that they now require additional discovery to determine whether the Isleta Pueblo thinning crew followed the work prescriptions.  See Response at 5.

Third, the Plaintiffs ask that the Court deny the Motion, because the First MTD argues for dismissal for lack of subject-matter jurisdiction or for partial summary judgment, and a party should be allowed discovery on the facts that a summary judgment motion raises.  See Response at 5 (citing Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291, 1298 (10th Cir. 2004); Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1326 (10th Cir. 2002); Budde v. Ling-Temco-Vought, Inc., 511 F.2d 1033, 1035 (10th Cir. 1975); Rome v. Romero, 225 F.R.D. 640, 643-644 (D. Colo. 2004)(Krieger, J.)).  The Plaintiffs contend that, under rule 56(d) of the

Federal Rules of Civil Procedure, the Court must allow the Plaintiffs discovery. <u>See</u> Response at 6. The Plaintiffs further argue that, to respond to the First, Second, and Third MTDs MTDs, the Plaintiffs require more discovery than the United States is willing to allow them. <u>See</u> Response at 6. The Plaintiffs contend that the First, Second, and Third MTDs are intertwined with the merits, because the United States argues that the members of the Isleta Pueblo thinning crew are not United States employees. <u>See</u> Response at 6. The Plaintiffs indicate that, "[w]here the claim and basis of the motion to dismiss arise from the same statute, as here, the motion is 'necessarily intertwined' with the merits," Response at 6 (quoting <u>U.S. ex rel Hafler v. Spectrum Emergency Care, Inc.</u>, 190 F.3d 1156, 1159 (10th Cir. 1999); and citing <u>Wheeler v. Hurdman</u>, 825 F.2d 257, 259 n.5 (10th Cir.)), and that, "when jurisdictional facts are intertwined with the facts central to the merits, the movant challenges both the Court's jurisdiction as well as the existence of Plaintiff's claim," Response at 6 (citing <u>Kerns v. United States</u>, 585 F.3d 187, 193 (4th Cir. 2009)). The Plaintiffs argue that the FTCA's discretionary-function and independent-contractor defenses require the Court to look to facts outside the Complaint, and so the Court should allow the Plaintiffs to engage in discovery to determine those facts. <u>See</u> Response at 6-7.

Fourth, the Plaintiffs contend that, to "address the discretionary function defense," the Plaintiffs must finish discovery on several actions that the Forest Service took as an agency and through the Isleta Pueblo thinning crew that violated "mandatory regulations and requirements," including limiting the Isleta Pueblo thinning crew's slash depth[3] "to a maximum of 18 [inches]";

---

[3] The Court surmises that "slash depth" refers to the depth to which the slash has piled. <u>See</u> Frank A. Albini and James K. Brown, U.S. Dep't of Agric., Forest Serv., Predicting Slash Depth for Fire Modeling at 1-2, in <u>Forestry</u> (1978), available at https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=3&cad=rja&uact=8&ve

directing the Isleta Pueblo crew to use the masticator "on rocky ground where it was known that the rotation of the steel teeth create a fire risk"; disregarding the risks created by allowing "the slash to dry out and accumulate over the 18 [inch] maximum to a height of over 36 [inches]"; not creating a safety plan; not maintaining fire safety tools near the thinning site; not fulfilling the responsibility "for preventing and extinguishing all fires"; not training the Isleta Pueblo thinning crew's masticator operator in accordance with "the FT400 Masticator Operating Manual by a certified trainer"; not "turn[ing] off the masticator, get[ting] off the masticator and attempt[ing] to put out any fire that started"; and not burning "the slash after it was cut." Response at 8-9. The Plaintiffs note that their preferred test for the FTCA's independent-contractor defense is highly fact specific. See Response at 9-10. The Plaintiffs explain that, to refute the United States' discretionary-function and independent-contractor arguments, the Plaintiffs hope to depose: (i) Francisco Luceras, a Forest Service "project inspector whose job it was to visit the forest thinning operations" and who recorded the "work instructions" given to the Isleta Pueblo thinning crew; (ii) Martinez; (iii) Jay Turner, the "ranger of the Mountainair Ranger District"; (iv) Mark Dixon, "the Manager of the Isleta Division of Natural Resources," who worked on the forest thinning project from the Isleta Pueblo side; and (v) "two fire investigators," who can speak to the Doghead Fire's cause. Response at 10.

Fifth, the Plaintiffs contend that granting a stay will prejudice the Plaintiffs. See Response at 11. The Plaintiffs note that, if the Court denies them discovery, the Court deprives them of

d=2ahUKEwjqjIvr8frfAhUeGDQIHfTjCgIQFjACegQICRAB&url=http%3A%2F%2Fdigitalco
mmons.usu.edu%2Fcgi%2Fviewcontent.cgi%3Farticle%3D1006%26context%3Dgovdocs_fores
t&usg=AOvVaw2bwsKWAOaGBMr9yAY7pMFP (last visited Jan. 19, 2019).

information required to combat the First, Second, and Third MTDs and of the ability to obtain compensation from the United States.  See Response at 11.

### 3.  **The Hearing.**

At the hearing, the Court began by indicating that it was inclined to deny the Motion.  See Draft Transcript of Hearing at 66:6-8 (taken November 21, 2018)(Court)("Tr.").[4]  The Court noted that it typically does not grant stays pending dispositive motions unless all parties agree to the stay and that the Court does not view sovereign immunity motions in FTCA cases as particularly special.  See Tr. at 66:7-25 (Court).  Further, the Court noted that the Plaintiffs have shown that they require discovery.  See Tr. at 67:2-4 (Court).

The United States repeated its arguments from the Motion.  See Tr. at 67:18-68:9 (Ortega). The Court responded that the United States Court of Appeals for the Tenth Circuit has not mandated stays when the United States' raises, in FTCA cases, sovereign immunity defenses.  See Tr. at 68:10-12 (Court).  The United States cited Garcia v. United States Air Force for the proposition that the Tenth Circuit has confirmed discovery stays pending motions challenging subject-matter jurisdiction and Tapia v. City of Albuquerque, No. CIV 13-0206 JB/GBW, 2014 WL 1289609 (D.N.M. March 17, 2014)(Browning, J.), to illustrate that the Court has agreed with the principle.  See Tr. at 68:13-20 (Ortega); id. at 69:3-8 (Ortega).  The Court noted that Tapia v. City of Albuquerque addressed a stay pending a 42 U.S.C. § 1983 qualified immunity motion and that Tapia v. City of Albuquerque follows Tenth Circuit caselaw, which indicates that qualified immunity protects against suits and liability.  See Tr. at 69:13-70:1 (Court).  The United States

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

cited other cases in which the District of New Mexico has granted discovery stays outside the context of qualified immunity, including <u>Saenz v. Lovington Municipal School District</u>, 2015 WL 1906140; <u>Deschine v. United States</u>, No. CIV 14-0018 MV/KBM, 2014 WL 11512631 (D.N.M. Oct. 10, 2014)(Molzen, M.J.); and <u>Roybal v. United States</u>, No. CIV 13-610 KG/GBW, 2014 WL 12617288 (D.N.M. April 9, 2014)(Wormuth, M.J.). <u>See</u> Tr. at 70:2-6 (Ortega); <u>id.</u> at 70:12-18 (Ortega).

The Court asked for what date the Court and the parties had set a hearing on the MTDs, and the Court and the parties determined that the dates for the hearings are January 22 and 23, 2019. <u>See</u> Tr. at 70:19-71:3 (Court, Clerk, Ortega, Dow). The United States argued that a stay would not prejudice the Plaintiffs, because the Plaintiffs had already obtained over 6,000 pages from the United States and had engaged in seven depositions. <u>See</u> Tr. at 71:12-24 (Ortega). The United States responded to the Plaintiffs' accusations that the United States flaunted Magistrate Judge Khalsa's discovery order and contended that the United States had not slowed discovery, although "there [have] been some hiccups in this case and that may have to do with some counsel are from . . . other districts." Tr. at 72:10-12 (Ortega). <u>See id.</u> at 72:25-73:5 (Ortega). The United States argued that it did not delay any depositions intentionally and that arranging depositions requires juggling multiple schedules. <u>See</u> Tr. at 72:23-75:10 (Ortega). The United States contended that the Plaintiffs have enough evidence to respond to the MTDs. <u>See</u> Tr. at 75:11-76:76:22 (Ortega). The United States further indicated that the Plaintiffs require no discovery to respond to the Second MTD, which argues that the Plaintiffs failed to exhaust their administrative remedies. <u>See</u> Tr. at 76:23-77:12 (Ortega).

The Court asked the Plaintiffs whether "it ma[d]e sense to pull up a couple of these motion[s] [-- particularly the "exhaustion and contractor one"-- ]instead of having one big hearing in late January." Tr. at 78:7-11 (Court). The Plaintiffs estimated that they seek the equivalent of three additional days of discovery and six additional depositions, and argue that there is no reason to deny them that discovery. See Tr. at 78:12-79:19 (Dow); id. at 80:2-6 (Dow). The Plaintiffs also noted that the United States asked for a partial summary judgment, and that, in the request for a partial summary judgment, the United States referenced Dixon and the Plaintiffs, accordingly, seek to depose him. See Tr. at 79:24-80:5 (Dow). The Court asked the Plaintiffs about the administrative-exhaustion argument, and the Plaintiffs replied that, although they had focused on the FTCA arguments, they "don't see how the Government can make such [an exhaustion ]motion." Tr. at 70:16-17 (Dow). See id. at 80:11-24 (Court, Dow).

The Court indicated that, at this time, it could not determine the relevance of the discovery that the Plaintiffs request. See Tr. at 83:6-13 (Court). The Court stated that it would follow its "usual rules of" denying stays pending dispositive motions unless both parties agree to the stay and that the Court would deny the Motion. Tr. at 73:17 (Court). See id. at 83:5-23 (Court).

## LAW REGARDING STAYS

A court has broad discretion in managing its docket, which includes decisions regarding issuing stays for all or part of a proceeding. See Clinton v. Jones, 520 U.S. 681, 706 (1997)("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936))).

[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for

the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. at 254-55. Recognizing that district courts must exercise moderation in issuing stays, the Supreme Court of the United States has noted that there are no strict rules for the district court to apply, because "[s]uch a formula . . . is too mechanical and narrow." Landis v. N. Am. Co., 299 U.S. at 255.

The party seeking a stay generally faces a difficult burden. See Clinton v. Jones, 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need."); S2 Automation LLC v. Micron Tech., Inc., No. CIV 11-0884 JB/WDS, 2012 WL 3150412, at *2 (D.N.M. July 23, 2012)(Browning, J.)(citing Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir. 1983)). "In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484. "The underlying principle clearly is that 'the right to proceed in court should not be denied except under the most extreme circumstances.'" Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (alterations omitted)(quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

The Tenth Circuit has acknowledged a district court's discretion in issuing discovery stays. In Cole v. Ruidoso Municipal Schools, 43 F.3d 1373 (10th Cir. 1994), the defendants argued "that they had an absolute right to a stay of discovery" after they filed a motion for qualified immunity and appealed to the Tenth Circuit, because the district court imposed conditions on the stay. 43 F.3d at 1386. The Tenth Circuit rebuffed the strict rules that the defendants suggested:

> As a general rule, discovery rulings are within the broad discretion of the trial court. The trial court's decision on discovery matters will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

Cole v. Ruidoso Mun. Sch., 43 F.3d at 1386 (citations omitted and internal quotation marks omitted).

Whether to issue a discovery stay depends greatly on each case's facts and progress. The Court has noted that the "[d]efendants in civil cases face an uphill battle in putting the brakes on discovery." Fabara v. GoFit, LLC, No. CIV 14-1146 JB/KK, 2015 WL 3544296, at *11 (D.N.M. May 13, 2015)(Browning, J.). Defendants particularly struggle "where there are a relatively small number of factual issues, the plaintiff's discovery requests are not particularly burdensome, and the defendant has not shown how it will suffer prejudice from them." Fabara v. GoFit, LLC, 2015 WL 3544296, at *11. In S2 Automation LLC v. Micron Technology, the Court granted in part and denied in part a motion to stay discovery, to extend pretrial deadlines, to vacate the trial setting, and to issue a protective order. See 2012 WL 3150412, at *1. The Court denied the motion to the extent it requested a discovery stay, because, "[u]ltimately, a stay is unnecessary." 2012 WL 3150412, at *3. The parties had made "significant progress on the disputed matters," and the Court had "issued rulings on many of the motions that Micron Technology contended needed to be resolved before the case proceeded." 2012 WL 3150412, at *3. Instead of granting the discovery stay, the Court extended deadlines that it had previously set in the case based on the case's increasing complexity. See 2012 WL 3150412, at *3. In Walker v. THI of New Mexico at Hobbs Center, No. CIV 09-0060 JB/KBM, 2011 WL 2728326 (D.N.M. June 28, 2011)(Browning, J.), the Court evaluated whether to stay deposition discovery until thirty days after it ruled on the motions

to dismiss two of the defendants, which would determine whether those defendants would remain in the suit and participate in discovery. See 2011 WL 2728326, at *1. The plaintiffs argued that the Court had already extended discovery deadlines and that issuing a stay would require rescheduling deadlines. See 2011 WL 2728326, at *1. The Court denied the motion to stay, because it did "not see a benefit to staying discovery." 2011 WL 2728326, at *2. The Court noted that counsel for the two defendants who were subject to the motions to dismiss had already indicated that they would not participate in deposition discovery. See 2011 WL 2728326, at *2. The Court stated: "There is thus no benefit to staying deposition discovery, and staying deposition discovery would further delay the case." 2011 WL 2728326, at *2. See Benavidez v. Sandia Nat'l Labs, No. CIV 15-0922 JB/LF, 2016 WL 6404798 (D.N.M. Sept. 27, 2016)(Browning, J.)(denying stay when "[t]here is no reason to put the Defendants to the trouble and expense of having to wait and file another motion -- largely regarding the same issues that are already before the Court in the pending Motion to Dismiss -- while the Plaintiffs get all of their ducks in a row").

## LAW REGARDING RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted). A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."). Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion. Fed. R. Civ. P. 12(b)(1). The Tenth Circuit has held that

motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F .3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Hill v. Vanderbilt Capital Advisors, LLC, No. CIV 10-0133, 2011 WL 6013025, at *8 (D.N.M. Sept. 30, 2011)(Browning, J.)(internal quotation marks omitted)(quoting Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9 (D.N.M. March 11, 2009)(Browning, J.)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment. See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d at 259 n.5). Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) of the Federal Rules

of Civil Procedure or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d at 1324).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the nonmoving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."  (citation omitted)); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555.

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). See Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs, 278 F. Supp. 3d 1245, 1259 (D.N.M. 2017)(Browning, J.).

"When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir. 2017)(quoting Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004)). There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322; (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002); and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. See Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d at 1103 (holding that the district court did not err by reviewing a seminar recording and a television episode on a rule 12(b)(6) motion, which were "attached to or referenced in the amended complaint," central to the plaintiff's claim, and "undisputed as to their accuracy and authenticity"). "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000).

In Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the district court cited portions of those motions in granting the motion." 627 F.3d at 1186. The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment." 627 F.3d at 1186-87. In other cases, the Tenth Circuit has emphasized that,

"[b]ecause the district court considered facts outside of the complaint . . . it is clear that the district

court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)."  Nard v. City of Okla. City,

153 F. App'x 529, 534 n.4 (10th Cir. 2005)(unpublished).[5]  In Douglas v. Norton, 167 F. App'x

698 (10th Cir. 2006)(unpublished), the Tenth Circuit addressed an untimely filed charge with the

Equal Employment Opportunity Commission -- which missed deadline the Tenth Circuit

analogized to a statute of limitations -- and concluded that, because the requirement is not

jurisdictional, the district court should have analyzed the question under rule 12(b)(6), and

"because the district court considered evidentiary materials outside of Douglas' complaint, it

should have treated Norton's motion as a motion for summary judgment."  Douglas v. Norton, 167

F. App'x at 704-05.

---

[5]Nard v. City of Okla. City is an unpublished opinion, but the Court can rely on an
unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th
Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive
value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . [a]nd we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its disposition,
> we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Nard v.
City of Okla. City, Douglas v. Norton, 167 F. App'x 698 (10th Cir. 2006)(unpublished), Rhoads
v. Miller, 352 F. App'x 289 (10th Cir. 2009)(unpublished), Hamilton v. Water Whole International
Corp., 302 F. App'x 789 (10th Cir. 2008)(unpublished), Ruppert v. Aragon, 448 F. App'x 862
(10th Cir. 2012)(unpublished), Stevens v. United States, 61 F. App'x 625 (10th Cir.
2003)(unpublished), Garling v. United States Environmental Protection Agency, 849 F.3d 1289,
2017 WL 894432 (10th Cir. 2017)(unpublished); Health Grades, Inc. v. Decatur Memorial
Hospital, 190 F. App'x 586 (10th Cir. 2006)(unpublished), Weldon v. Ramstad-Hvass, 512
F. App'x 783 (10th Cir. 2013)(unpublished), and Moore v. Busby, 92 F. App'x 699 (10th Cir.
2004)(unpublished), have persuasive value with respect to material issues, and will assist the Court
in its disposition of this Memorandum Opinion and Order.

The Court has previously ruled that, when a plaintiff references and summarizes defendants' statements in a complaint, the Court cannot rely on documents containing those statements that the defendants attach in their briefing. See Mocek v. City of Albuquerque, No. CIV 11-1009 JB/KBM, 2013 WL 312881, at *50-51 (D.N.M. Jan. 14, 2013)(Browning, J.). The Court reasoned that the complaint did not incorporate the documents by reference, nor were the documents central to the plaintiff's allegations in the complaint, because the plaintiff cited the statements only to attack the defendant's reliability and truthfulness. See 2013 WL 312881, at *50-51. The Court has also previously ruled that, when determining whether to toll a statute of limitations in an action alleging fraud and seeking subrogation from a defendant, the Court may not use interviews and letters attached to a motion to dismiss, which show that a plaintiff was aware of the defendant's alleged fraud before the statutory period expired. See Great Am. Co. v. Crabtree, No. CIV 11-1129 JB/KBM, 2012 WL 3656500, at *3, *22-23 (D.N.M. Aug. 23, 2012)(Browning, J.)("Crabtree"). The Court in Crabtree determined that the documents did not fall within any of the Tenth Circuit's exceptions to the general rule that a complaint must rest on the sufficiency of its contents alone, as the complaint did not incorporate the documents by reference or refer to the documents. See 2012 WL 3656500, at *22-23. See also Mocek v. City of Albuquerque, 2013 WL 312881, at *50 (refusing to consider statements that were not "central to [the plaintiff's] claims").

On the other hand, in a securities class action, the Court has ruled that a defendant's operating certification, to which plaintiffs refer in their complaint, and which was central to whether the plaintiffs adequately alleged a loss, falls within an exception to the general rule, so the Court may consider the operating certification when ruling on the defendant's motion to dismiss

without converting the motion into one for summary judgment.  See Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Secs. Tr. 2006-3, 825 F. Supp. 2d 1082, 1150-51 (D.N.M. 2011)(Browning, J.).  See also Sec. & Exch. Comm'n v. Goldstone, 952 F. Supp. 2d 1060, 1217-18 (D.N.M. 2013)(Browning, J.)(considering, on a motion to dismiss, electronic mail transmissions referenced in the complaint as "documents referred to in the complaint," which are "central to the plaintiff's claim" and whose authenticity the plaintiff did not challenge); Mata v. Anderson, 760 F. Supp. 2d 1068, 1101 (D.N.M. 2009)(Browning, J.)(relying on documents outside of the complaint because they were "documents that a court can appropriately view as either part of the public record, or as documents upon which the Complaint relies, and the authenticity of which is not in dispute").

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'"  Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)("Celotex").

> Before the court can rule on a party's motion for summary judgment, the moving party must satisfy its burden of production in one of two ways: by putting evidence into the record that affirmatively disproves an element of the nonmoving party's case, or by directing the court's attention to the fact that the non-moving party lacks evidence on an element of its claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323-25.  On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and

designate specific facts to make a showing sufficient to establish the existence of an element essential to his case in order to survive summary judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007).

Plustwik v. Voss of Nor. ASA, No. CIV 11-0757 DS, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(Sam, J.). "If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[6] Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)("Liberty Lobby"). In American Mechanical Solutions, LLC v. Northland Process Piping, Inc., 184 F. Supp. 3d 1030 (D.N.M. 2016)(Browning, J.), the Court confronted a situation in which the movant did not offer evidence disproving the nonmovant's allegations, but, rather, argued, under the second option in Celotex, that the nonmovant lacked evidence to establish an element of its claim. See 184 F. Supp. 3d at 1075. The Court granted summary judgment for the movant, because the nonmovant -- the plaintiff -- did not offer expert evidence supporting causation or proximate causation for its breach-of-contract or breach-of-the-implied-warranty-of-merchantability claims as New Mexico law required to establish a prima facie case for those elements. 184 F. Supp. 3d at 1075. The Court concluded that Celotex applied to the situation, and

---

[6]Although the Honorable William J. Brennan, Jr., then-Associate Justice of the Supreme Court, dissented in Celotex, this sentence is widely understood to be an accurate statement of the law. See 10A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

that, without the requisite evidence, the nonmovant failed to prove "an essential element of the . . . case." 184 F. Supp. 3d at 1075 (quoting Plustwik v. Voss of Nor. ASA, 2013 WL 1945082, at *1). The Court thus granted a motion for summary judgment, which the defendant argued without any supporting evidence and by indicating only that the plaintiff, who bore the burden of proof, had no competent evidence. See 184 F. Supp. 3d at 1075.

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)(quoting Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d at 1241)). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Liberty Lobby, 477 U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine

factual issue to be tried." (internal quotation marks omitted)(quoting <u>Coleman v. Darden</u>, 595 F.2d, 533, 536 (10th Cir. 1979)).

Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." <u>Colony Nat'l Ins. v. Omer</u>, No. CIV 07-2123 JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Fed. R. Civ. P. 56(e); <u>Argo v. Blue Cross & Blue Shield of Kan., Inc.</u>, 452 F.3d 1193, 1199 (10th Cir. 2006)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" <u>Colony Nat'l Ins. v. Omer</u>, 2008 WL 2309005, at *1 (quoting <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Liberty Lobby</u>, 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. <u>Vitkus v. Beatrice Co.</u>, 11 F.3d at 1539 (citing <u>Liberty Lobby</u>, 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. See <u>Liberty Lobby</u>, 477 U.S. at 251 (citing <u>Vitkus v. Beatrice Co.</u>, 11 F.3d at 1539; <u>Schuylkill & Dauphin Improvement Co. v. Munson</u>, 81 U.S. (14 Wall.) 442, 448 (1871)). "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." <u>Liberty Lobby</u>, 477 U.S. at 249 (citations omitted)(citing <u>First Nat. Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968); <u>Dombrowski v. Eastland</u>, 387 U.S. 82, 87 (1967)). Where a rational trier of fact, considering the record as a

whole, cannot find for the nonmoving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Liberty Lobby, 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Liberty Lobby, 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party. See Liberty Lobby, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999). Fourth, the court cannot decide any issues of credibility. See Liberty Lobby, 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts. This doctrine developed most robustly in the qualified immunity arena. In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court concluded that summary judgment is appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts. 550 U.S. at 378-81. The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus[.] Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote

- 28 -

omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (emphasis in original).

The Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304

(10th Cir. 2009), and explained:

[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott[ v. Harris], 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cty., 584 F.3d at 1312 (brackets omitted). "The Tenth Circuit, in Rhoads

v. Miller, 352 F. App'x 289 [, 291] (10th Cir. 2009) . . . [(unpublished),] explained that the blatant

contradictions of the record must be supported by more than other witnesses' testimony[.]" Lymon

v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.), aff'd, 499 F. App'x

771 (10th Cir. 2012).

**LAW REGARDING HEARSAY**

"Hearsay testimony is generally inadmissible." United States v. Christy, No. CR 10-1534

JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802).

Rule 801(c) of the Federal Rules of Evidence provides: "'Hearsay' means a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness. See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay. If admitted for impeachment purposes, however, it is not hearsay."). "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.

Hearsay is generally unreliable and untrustworthy. See Chambers v. Mississippi, 410 U.S. 284, 288 (1973)(noting that hearsay is generally untrustworthy and lacks traditional indicia of reliability); United States v. Lozado, 776 F.3d 1119, 1121 (10th Cir. 2015)("Hearsay is generally inadmissible as evidence because it is considered unreliable." (citing Williamson v. United States, 512 U.S. 594, 598 (1994)); United States v. Console, 13 F.3d 641, 657-58 (3d. Cir. 1993)(stating hearsay is "inherently untrustworthy" because of the lack of an oath, presence in court, and cross examination (quoting United States v. Pelullo, 964 F.2d 193, 203 (3rd Cir. 1992)). Testimonial proof is necessarily based upon the human senses, which can be unreliable. See 5 Jack Weinstein & Margaret Berger, Weinstein's Federal Evidence § 802.02[1][b], at 802-5 (Joseph McLaughlin

ed., 2d ed. 2017)("Weinstein's Federal Evidence"). The Anglo-American tradition uses three devices to illuminate inaccuracies in the testimonial proof: (i) the oath; (ii) personal presence at trial; (iii) and cross examination. See Weinstein's Federal Evidence § 802.02[2][a], at 802-5. It is difficult to evaluate the credibility of out-of-court statements when the three safeguards mentioned above are unavailable. See Weinstein's Federal Evidence § 802.02[3], at 802-6 to -7. Courts view hearsay evidence as unreliable because it is not subject to an oath, personal presence in court, or cross examination. See, e.g., United States v. Console, 13 F.3d at 657-58.

## LAW REGARDING THE FTCA

As with any jurisdictional issue, the party bringing the suit against the United States bears the burden of proving that Congress has waived sovereign immunity. See James v. United States, 970 F.2d 750, 753 (10th Cir. 1992). It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). "Challenges to subject-matter jurisdiction can . . . be raised at any time prior to final judgment." Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004)(citing Capron v. Van Noorden, 6 U.S. 126, 127 (1804)).

The terms of the United States' consent define the parameters of federal court jurisdiction to entertain suits brought against it. See United States v. Orleans, 425 U.S. 807, 814 (1976); Ewell v. United States, 776 F.2d 246, 248 (10th Cir. 1985). When the United States waives its immunity from suit, a court should neither narrow the waiver nor "take it upon [itself] to extend the waiver beyond that which Congress intended." Smith v. United States, 507 U.S. at 203 (quoting United States v. Kubrick, 444 U.S. 111, 117-18 (1979)).

In 1948, Congress enacted the FTCA, which waives the United States' sovereign immunity for certain torts that federal employees commit. See Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994). Congress waives sovereign immunity only for certain torts that United States employees cause while acting within the scope of their office or of their employment. See 28 U.S.C. § 1346(b); Warren v. United States, 244 F. Supp. 3d 1173, 1212 (D.N.M. 2017)(Browning, J.).

### 1. Exhaustion Requirements.

The FTCA's jurisdictional statute provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a) (emphasis added). This statute "requires that claims for damages against the government be presented to the appropriate federal agency by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 852 (10th Cir. 2005)(quoting Bradley v. United States ex. rel. Veterans Admin., 951 F.2d 268, 270 (10th Cir. 1991)).

"[A] claim should give notice of the underlying facts and circumstances 'rather than the exact grounds upon which plaintiff seeks to hold the government liable.'" Staggs v. United States ex rel. Dep't of Health & Human Servs., 425 F.3d 881, 884 (10th Cir. 2005)(quoting Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d at 853). The Tenth Circuit has added that "the FTCA's notice requirements should not be interpreted inflexibly." Estate of Trentadue ex rel.

Aguilar v. United States, 397 F.3d at 853. Whether a plaintiff's administrative claim is sufficient to meet 28 U.S.C. § 2675(a)'s notice requirement is a question of law. See Staggs v. United States ex rel. Dep't of Health & Human Servs., 425 F.3d at 884; Warren v. United States, 244 F. Supp. 3d at 1213.

      2.      **Filing Deadlines.**

The Tenth Circuit recently observed:

> [T]he FTCA has both an administrative-exhaustion requirement, set forth in 28 U.S.C. § 2675(a), and a statute of limitations, set forth in 28 U.S.C. § 2401(b). Combined, these provisions act as chronological bookends to an FTCA claim, marking both a date before which a claim may not be filed and a date after which any filing is untimely.

Barnes v. United States, 776 F.3d 1134, 1139 (10th Cir. 2015)(Holmes, J.). Once a tort claim accrues against the United States, 28 U.S.C. § 2401 gives a claimant two years to present that claim in writing to the appropriate federal agency. See 28 U.S.C. § 2401(b)(explaining that claim is "forever barred" unless presented within two years). If the agency denies the claim, the claimant has six months to file suit in federal court. See 28 U.S.C. § 2401(b). The Tenth Circuit has clarified that a party must satisfy both of § 2401's prongs: "28 U.S.C. § 2401(b) bars a tort claim against the United States 'unless it is presented to the proper agency within two years of its accrual *and* suit is commenced within six months of notice of the claim's denial by the agency.'" Ponce v. United States, No. CIV 13-0334 JB/ACT, 2013 WL 6503535, at *14 (D.N.M. Nov. 25, 2013)(Browning, J.)(emphasis in Ponce v. United States)(quoting Indus. Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994)).

If the agency fails to make a final disposition of the claim within six months, the claimant may "deem . . ." that failure a "final denial of the claim," and proceed with his or her suit under

the FTCA.  28 U.S.C. § 2675(a).  In the Tenth Circuit, "(at least until there has been a final denial by the relevant agency) there is no limit on when a plaintiff may file a lawsuit predicated on a deemed denial."  Barnes v. United States, 776 F.3d at 1140-41.  An agency may "trigger . . . § 2401(b)'s six-month limitations period through final denial of administrative FTCA claims after a 'deemed denial.'"  Barnes v. United States, 776 F.3d at 1141.  See Warren v. United States, 244 F. Supp. 3d at 1213.

### 3. **Effect of Failure to Exhaust**.

"[A]s a general rule, a premature 'complaint cannot be cured through amendment, but instead, plaintiff must file a new suit.'"  Duplan v. Harper, 188 F.3d 1195, 1199 (10th Cir. 1999)(internal quotation marks omitted)(Sparrow v. U.S. Postal Serv., 825 F. Supp. 252, 255 (E.D. Cal. 1993)(Wagner, J.)).  This rule exists, because "[a]llowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system."  Duplan v. Harper, 188 F.3d at 1199.  Courts must dismiss these claims "without regard to concern for judicial efficiency."  Ruppert v. Aragon, 448 F. App'x 862, 863 (10th Cir. 2012)(unpublished).  Even the filing of an amended complaint may not serve to cure a prematurely filed original complaint.  See Stevens v. United States, 61 F. App'x 625, 627 (10th Cir. 2003)(unpublished).

There is at least one limited exception to the general rule.  Duplan v. Harper recognizes an exception where the United States "expressly agreed" to the district court's decision to treat the amended complaint as a new action.  188 F.3d at 1199.  See Mires v. United States, 466 F.3d 1208, 1211 (10th Cir. 2006)(concluding that there is a new action where plaintiff "sought permission to

file -- and, with the government's consent and district court's permission, did file -- an amended complaint"). See also Warren v. United States, 244 F. Supp. 3d at 1214.

### 4. **Definition of "Sufficient Notice".**

Courts define "sufficient notice" based on the facts of each case before them. In Estate of Trentadue ex rel. Aguilar v. United States, the United States contended that the plaintiffs' administrative claim was insufficient for notice of intentional infliction of emotional distress, because it was based on a theory that prison officials had murdered Trentadue, the inmate, and the allegations did not discuss the specific grounds on which the district court relied in awarding damages, "namely the government's treatment of the Trentadue family in the aftermath of his death and its actions in conducting an autopsy after claiming that no autopsy would be performed without prior approval." 397 F.3d at 852. The Tenth Circuit disagreed, holding that the "plaintiffs' administrative claim provided notice that [the United States Department of Justice ("DOJ")] should investigate the prison officials' conduct." 397 F.3d at 853. The Tenth Circuit reasoned that language within the administrative claim "gave DOJ notice of the facts and circumstances surrounding plaintiffs' emotional distress claim and, moreover, is consistent with the plaintiffs' subsequent allegations in their amended complaints." 397 F.3d at 853.

The Tenth Circuit contrasted Estate of Trentadue ex rel. Aguilar v. United States with Dynamic Image Techs., Inc. v. United States, 221 F.3d 34 (1st Cir. 2000), where the United States Court of Appeals for the First Circuit held that the plaintiff's administrative claim did not put the agency on notice that it should have investigated the potentially tortious conduct, because the plaintiff's administrative claims were for "misrepresentation, libel, slander, contractual interference, and discrimination," and the amended claims for false arrest arose out of two separate

incidences.  221 F.3d at 40.  The First Circuit stated: "Though prolix, that claim did not contain so much as a hint about the alleged false arrest or the incident that spawned it."  221 F.3d at 40.  The First Circuit thus concluded that, "regardless of the labels employed in the amended complaint, that complaint, in substance, seeks recovery based solely on an incident that was not mentioned in the plaintiffs' administrative claim."  221 F.3d at 40 (emphasis omitted).

In Glade ex rel. Lundskow v. United States, 692 F.3d 718 (7th Cir. 2012), a man receiving mental health treatment at a Veterans Administration ("VA") facility alleged that his therapist worsened his condition by initiating a sexual relationship with him.  See 692 F.3d at 720.  He filed a notice of claim with the VA that "does not mention a failure of anyone to use due care besides the therapist."  692 F.3d at 722.  The United States Court of Appeals for the Seventh Circuit, reviewing the notice, commented that "reading the administrative claim you would think the plaintiff was just seeking damages under a theory of respondeat superior against an employer for an employee's battery, and we know that such a theory won't fly under the Tort Claims Act."  692 F.3d at 722.  The plaintiff recognized this problem before filing his complaint and thus asserted a "special relationship" theory of liability instead.  692 F.3d at 723.  The Seventh Circuit affirmed the district court's decision to dismiss the suit, explaining:

> The administrative claim need not set forth a legal theory, but it must allege facts that would clue a legally trained reader to the theory's applicability.  *Palay v. United States,* 349 F.3d 418, 425-26 (7th Cir. 2003); *Murrey v. United States,* 73 F.3d 1448, 1452-53 (7th Cir. 1996).  The plaintiff's claim didn't do that.  The legally trained reader would assume that the plaintiff simply was unaware that the mere fact of a battery by a VA employee would not impose liability on the employer.  We're about to see that the "special relationship" tort theory advanced in the plaintiff's complaint (as distinct from the administrative claim) is outside the bounds of plausibility -- hardly the sort of theory that the VA's legal department should have guessed would be the ground of a lawsuit.

Glade ex rel. Lundskow v. United States, 692 F.3d at 722-23.  See Warren v. United States, 244 F. Supp. 3d at 1215.

### LAW REGARDING THE DISCRETIONARY FUNCTION EXCEPTION

The FTCA also contains several exceptions that preclude the United States' liability.  See 28 U.S.C. § 2680.  One of these exceptions is the discretionary function exception, which provides that the FTCA shall not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary-function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The Supreme Court has characterized § 2680(a) as the "boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).  See Warren v. United States, 244 F. Supp. 3d 1173, 1233 (D.N.M. 2017)(Browning, J.)(noting that, at the motion to dismiss stage, in an FTCA case, a plaintiff "must establish more than . . . abstract negligence" "and, instead, must also first establish that her claims are not based upon actions immunized from liability under the FTCA's discretionary function exception").

The exception must be strictly construed in the United States' favor.  See U.S. Dep't of Energy v. Ohio, 503 U.S. 607, 615 (1992)("Waivers of immunity must be strictly construed in favor of the sovereign and not enlarged beyond what the language requires."  (internal citations and quotation marks omitted)).  Its application is a threshold jurisdictional issue in any FTCA case. See Johnson v. U.S. Dep't of Interior, 949 F.2d 332, 335 (10th Cir. 1991).

In Berkovitz by Berkovitz v. United States, 486 U.S. 531 (1988), the Supreme Court enunciated a two-prong analysis for determining when the FTCA's discretionary function exception applies.  See 486 U.S. at 536; Domme v. United States, 61 F.3d 787, 789-90 (10th Cir. 1995); Black Hills Aviation, Inc. v. United States, 34 F.3d 968, 972-73 (10th Cir. 1994); Kiehn v. United States, 984 F.2d 1100, 1102-03 (10th Cir. 1993).  First, the acts or omissions must be "discretionary in nature, acts that 'involve an element of judgment or choice.'"  United States v. Gaubert, 499 U.S. 315, 322 (1991)(quoting Berkovitz by Berkovitz v. United States, 486 U.S. at 536).  Second, the conduct must be "based on considerations of public policy."  United States v. Gaubert, 499 U.S. at 323 (quoting Berkovitz by Berkovitz v. United States, 486 U.S. at 537).  See Garling v. U.S. Envtl. Prot. Agency, 849 F.3d 1289, 1294-95, 2017 WL 894432, at *3 (10th Cir. 2017)(unpublished).  In applying the Berkovitz by Berkovitz v. United States analysis, the question of negligence is irrelevant: "When the government performs a discretionary function, the exception to the FTCA applies regardless of 'whether or not the discretion involved be abused.'"  Redman v. United States, 934 F.2d 1151, 1157 (10th Cir. 1991)(quoting 28 U.S.C. § 2680(a)).

Berkovitz by Berkovitz v. United States' second prong protects conduct if it was or could have been "based on considerations of public policy."  Kiehn v. United States, 984 F.2d at 1105 (internal quotation marks omitted)(quoting Berkovitz by Berkovitz v. United States, 486 U.S. at 537).  This principle is a result of the rule that the second prong requires that the challenged conduct must be, by its nature, "susceptible to policy analysis."  United States v. Gaubert, 499 U.S. at 325.  Where agency policy allows an employee to exercise discretion, there is a "strong presumption" that the acts authorized by the policy are grounded in public policy.  United States v. Gaubert, 499 U.S. at 324.  Where a plaintiff alleges a negligent omission, it is "irrelevant

whether the [omission] was a matter of deliberate choice, or a mere oversight." Kiehn v. United States, 984 F.2d at 1105 (internal quotation marks omitted)(quoting Allen v. United States, 816 F.2d 1417, 1422 n.5 (10th Cir. 1987). "The failure to consider some or all critical aspects of a discretionary judgment does not make that judgment less discretionary and does not make the judgment subject to liability." Kiehn v. United States, 984 F.2d at 1105.

The FTCA's discretionary function exception protects the challenged conduct if it involves judgment or choice, and is the kind of conduct that could be based on public policy. See United States v Gaubert, 499 U.S. at 324-325. The two-prong test in Berkovitz by Berkovitz v. United States applies equally to all government employees, regardless of their rank or position: "[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. at 813. See United States v. Gaubert, 499 U.S. at 325 ("Discretionary conduct is not confined to the policy or planning level."); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. at 811 ("Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." (internal quotations marks omitted)(quoting Dalehite v. United States, 346 U.S. 15, 35-36 (1953))).

## LAW REGARDING THE FTCA'S INDEPENDENT-CONTRACTORS EXCEPTION

"The FTCA does not authorize suits based on the acts of independent contractors or their employees." Curry v. United States, 97 F.3d 412, 414 (10th Cir. 1996)(citing United States v. Orleans, 425 U.S. at 814; Logue v. United States, 412 U.S. 521, 527 (1973)). The FTCA's waiver

of sovereign immunity applies to government employees acting within their employment's scope. See, e.g., Tsosie v. United States, 452 F.3d 1161, 1163 (10th Cir. 2006)(citing Curry v. United States, 97 F.3d at 414). "Although 'employees' of the government include officers and employees of federal agencies, 'independent contractors' are not 'employees.'" Tsosie v. United States, 452 F.3d at 1163)(citing Curry v. United States, 97 F.3d at 414). "[T]he question whether one is an employee of the United States is to be determined by federal law." Waconda v. United States, No. CIV 06-0101 JB/ACT, 2007 WL 2219472, at *10 (D.N.M. May 23, 2007)(Browning, J.)(quoting Lurch v. United States, 719 F.2d 333, 337 (10th Cir. 1983)).

When the federal government "has the power to control the detailed physical performance of the individual," the individual is a federal employee, and not an independent contractor. Tsosie v. United States, 452 F.3d at 1163 (citing Duplan v. Harper, 188 F.3d at 1200). Under this "control test," a court should inquire whether the federal government "supervises the individual's day-to-day operations." Tsosie v. United States, 452 F.3d at 1163 (citing Duplan v. Harper, 188 F.3d at 1200). When engaging in this inquiry, a court should consider:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses his own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

Tsosie v. United States, 452 F.3d at 1163-64 (citing Duplan v. Harper, 188 F.3d at 1200).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). "Qualified immunity protects federal

and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'" Roybal v. City of Albuquerque, No. CIV 08-0181 JB/LFG, 2009 WL 1329834, at *10 (D.N.M. April 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The Supreme Court deems it "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." Butz v. Economou, 438 U.S. 478, 504 (1978). See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 392 (1971)("Bivens"). "The qualified immunity analysis is the same whether the claims are brought under *Bivens* or pursuant to the post-Civil War Civil Rights Acts." Breidenbach v. Bolish, 126 F.3d 1288, 1291 (10th Cir. 1997).

Under § 1983 and Bivens, a plaintiff may seek money damages from government officials who have violated his or her constitutional or statutory rights. To ensure, however, that fear of liability will not "unduly inhibit officials in the discharge of their duties," Anderson v. Creighton, 483 U.S. 635, 638 (1987), the officials may claim qualified immunity; so long as they have not violated a "clearly established" right, the officials are shielded from personal liability, Harlow v. Fitzgerald, 457 U.S. at 818.

> That means a court can often avoid ruling on the plaintiff's claim that a particular right exists. If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages. The court need never decide whether the plaintiff's claim, even though novel or otherwise unsettled, in fact has merit.

Camreta v. Greene, 563 U.S. 692, 705 (2011).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." Pearson v. Callahan, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. at 818). Qualified immunity also shields officers who have "reasonable, but mistaken beliefs," Saucier v. Katz, 533 U.S. 194, 206 (2001), and operates to protect officers from the sometimes "hazy border[s]" of the law, Saucier v. Katz, 533 U.S. at 205 (quoting Priester v. Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000)). When a defendant asserts qualified immunity, the plaintiff must demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct. See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009). See also Pueblo of Pojoaque v. New Mexico, 214 F. Supp. 3d 1028, 1079 (D.N.M. 2016)(Browning, J.).

## ANALYSIS

The Court will deny the Defendants' Motion. The Court concludes that a stay will impede the Plaintiffs' ability to respond to the MTDs and so will prejudice the Plaintiffs. The Plaintiffs do not argue that they require additional discovery to respond to the Defendants' exhaustion argument. See Tr. at 80:11-24 (Court, Dow). The Plaintiffs, however, seek additional discovery to respond to the Defendants' discretionary-function and independent-contractor arguments. See Motion at 1. The Court, accordingly, will not grant a discovery stay.

The Court generally hesitates to stay discovery unless both parties agree to the stay, see Fabara v. GoFit, LLC, 2015 WL 3544296, at *11 (denying a discovery stay when the defendant filed a motion to dismiss arguing lack of personal jurisdiction, because the parties could employ the discovery in a state action); Walker v. THI of N.M. at Hobbs Ctr., 2011 WL 2728326, at *2 (denying a discovery stay pending a motion to dismiss when the stay would delay the case, and staying discovery provided no benefit), and the Court will not stay discovery where such a stay

will prejudice the plaintiff, <u>Sizova v. Nat. Inst. of Standards & Tech.</u>, 282 F.3d at 1326 ("[R]efusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant." (citing <u>First City, Texas-Houston, N.A. v. Rafidain Bank</u>, 150 F.3d 172, 176-77 (2d Cir. 1998); <u>Filus v. Lot Polish Airlines</u>, 907 F.2d 1328, 1332 (2d Cir. 1990); <u>Majd-Pour v. Georgiana Cmty. Hosp., Inc.</u>, 724 F.2d 901, 903 (11th Cir. 1984); <u>Canavan v. Beneficial Fin. Corp.</u>, 553 F.2d 860, 865 (3d Cir. 1977))). <u>See</u> <u>Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.</u>, 713 F.2d at 1484 ("[T]the right to proceed in court should not be denied except under the most extreme circumstances." (internal quotation marks and omitted)(quoting <u>Klein v. Adams & Peck</u>, 436 F.2d at 339)); <u>Fed. Deposit Ins. Corp. v. Dee</u>, 222 F. Supp. 3d 972, 1024-26 (D.N.M. 2016)(Browning, J.)("[W]here a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." (quoting <u>Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.</u>, 713 F.2d at 1484)).

The Court particularly will not stay discovery where a party requires additional evidence to support a response opposing a jurisdictional challenge. The Tenth Circuit has indicated that a court should allow at least limited discovery if it is necessary to respond to such a motion. <u>See</u> <u>Sizova v. Nat. Inst. of Standards & Tech.</u>, 282 F.3d at 1326 ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." (quoting <u>Budde v. Ling-Temco Vought, Inc.</u>, 511 F.2d 1033, 1035 (10th Cir. 1975)). "While the district court has broad discretion in determining whether to permit jurisdictional discovery, a refusal to grant discovery constitutes an abuse of discretion if either the pertinent jurisdictional facts are controverted or a more satisfactory showing of the facts is necessary."

Health Grades, Inc. v. Decatur Mem'l Hosp., 190 F. App'x 586, 589 (10th Cir. 2006)(unpublished)(citing Sizova v. Nat. Inst. of Standards & Tech., 282 F.3d at 1326). See Kerns v. United States, 585 F.3d at 193 (noting that, when a jurisdictional issue is intertwined with facts related to the merits, "[a] trial court should then afford the plaintiff the procedural safeguards -- such as discovery -- that would apply were the plaintiff facing a direct attack on the merits"). Cf. also Weldon v. Ramstad-Hvass, 512 F. App'x 783, 797 (10th Cir. 2013)(unpublished)(upholding discovery stay where the plaintiff "identifies no facts that are unavailable to him without discovery"); Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291, 1298-99 (10th Cir. 2004)(upholding a discovery stay where there was a "very low probability" that discovery would uncover information establishing personal jurisdiction).

The Court will permit the Plaintiffs to engage in liability discovery here. The Court deems the discretionary-function and independent-contractor exceptions jurisdictional issues on which the Tenth Circuit would direct the Court to permit discovery. See, e.g., Garcia v. U.S. Air Force, 533 F.3d at 1175 ("This 'discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction.'" (quoting Aragon v. United States, 146 F.3d 819, 823 (10th Cir. 1998)); Tsosie v. United States, 452 F.3d at 1163 (addressing the independent-contractor exception under a 12(b)(1) motion for lack of subject matter jurisdiction). That the Plaintiffs have already obtained discovery, see Motion at 4, is irrelevant if the Plaintiffs require additional discovery to respond to factual disputes. See Sizova v. Nat. Inst. of Standards & Tech., 282 F.3d at 1326 ("Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'" (quoting Wells Fargo & Co. v. Wells Fargo

Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977))).  Moreover, the Plaintiffs request minimal discovery.  The Plaintiffs request around six depositions -- the Plaintiffs mention deposing: (i) Luceras; (ii) Martinez; (iii) Turner; (iv) Dixon; and (v) two fire investigators.  See Response at 10; Tr. at 79:3-19 (Dow); id. at 80:1-6 (Dow).  Luceras, Martinez, Turner, and Dixon have knowledge regarding the Forest Service' role in supervising and controlling the Isleta Pueblo thinning crew.  See Response at 10.  Such information is relevant to the discretionary-function and independent-contractor defenses.  See 28 U.S.C. § 2680(a); Tsosie v. United States, 452 F.3d at 1163 (citing Duplan v. Harper, 188 F.3d at 1200).  The fire investigators' testimony may reveal what Forest Service actions -- whether discretionary or contracted-for -- caused the Doghead Fire. The Plaintiffs' interest in such discovery outweighs the Defendants' desire to save time and resources.  Cf. Med Flight Air Ambulance, Inc. v. MGM Resorts Int'l, No. CIV 17-0246 WJ/KRS, 2017 WL 3172877, at *4 (D.N.M. May 26, 2017)(Sweazea, M.J.)(stating that "[t]he Court is cognizant of the high cost of litigation and engaging in discovery.  Nonetheless, the countervailing interest of having sufficient information to make the threshold jurisdictional determination tips the scale in favor of allowing some limited discovery"; and permitting "15 interrogatories, 15 requests for production, and 15 requests for admission").

Further, the First MTD raises a summary judgment motion, and the discretionary-function and independent-contractor defenses should be treated as motions for summary judgment. "When . . . the jurisdictional question is intertwined with the merits of the case, the government's motion should be construed as a motion for summary judgment, not a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1159 (10th Cir. 1999)(citing Wheeler v. Hurdman, 825 F.2d at 259).

When a motion to dismiss raises the FTCA's waiver of immunity, "[r]ule 56 governs because the determination of whether the FTCA excepts the government's actions from its waiver of sovereign immunity involves both jurisdictional and merits issues." <u>Redmon By & Through Redmon v. United States</u>, 934 F.2d 1151, 1155 (10th Cir. 1991).

The Court will not stay discovery pending the Plaintiffs' response to a summary judgment motion. A summary judgment motion turns on the presentation of facts. <u>See</u> Fed. R. Civ. P. 56(c). To prevail against a summary judgment motion, a party must put forth evidence establishing facts as disputed. <u>See</u> Fed. R. Civ. P. 56(c). Rule 56 emphasizes allowing discovery. Rule 56(d) shows that the Advisory Committee on the Federal Rules of Civil Procedure contemplates delaying a decision on a summary judgment motion or lengthening discovery time for parties that cannot timely respond with the required facts; the rule states:

> **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > **(1)** defer considering the motion or deny it;
> >
> > **(2)** allow time to obtain affidavits or declarations or to take discovery; or
> >
> > **(3)** issue any other appropriate order.

Fed. R. Civ. P. 56(d). Rule 56(d) "carries forward without substantial change the provisions of former subdivision (f)[7]," Fed. R. Civ. P. 56 advisory committee's note, and "[t]he general

---

[7]Former rule 56(f) provided:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a

principle of Rule 56(f) is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition,'" Price ex rel. Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000)(quoting Liberty Lobby, 477 U.S. at 250 n.5).  See Price ex rel. Price v. W. Res., Inc., 232 F.3d at 783 ("Rule 56(f) allows a court to stay or deny a summary judgment motion in order to permit further discovery if the nonmovant states by affidavit that it lacks facts necessary to oppose the motion.").  The Plaintiffs have not submitted an affidavit or declaration showing the necessity for relief under rule 56(d), but the Plaintiffs have indicated that they require discovery to continue as normal.  See Response at 10; Tr. at 79:3-19 (Dow); id. at 80:1-6 (Dow).  The Court will not take the action opposite rule 56(d) and preclude the Plaintiffs' from obtaining discovery.  As noted above, Luceras, Martinez, Turner, Dixon, and the fire investigators all may provide information useful to opposing the MTDs, and the Plaintiffs have indicated that they require such information to respond to the MTDs.

The Defendants argue that a court should stay discovery pending a dispositive motion, particularly a jurisdictional motion.  The Defendants cite several qualified immunity cases to support their argument, but as the Court noted at the hearing, Tenth Circuit and Supreme Court caselaw treats qualified immunity specially and states that qualified immunity protects against liability and against the lawsuit.  See Stonecipher v. Valles, 759 F.3d at 1148-49 (stating that a district court may stay discovery when a defendant files a dispositive motion arguing qualified immunity); Moore v. Busby, 92 F. App'x at 702 (upholding discovery stay pending qualified

---

continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just.

Fed. R. Civ. P. 56(f) (quoted in Price ex rel. Price v. W. Res., Inc., 232 F.3d at 783 n.2).

immunity motion); <u>Saenz v. Lovington Mun. Sch. Dist.</u>, 2015 WL 1906140, at *10-11 (staying discovery after the defendant filed a motion to dismiss that raised qualified immunity); <u>Tapia v. City of Albuquerque</u>, 2014 WL 1289609, at *12 (granting a motion to stay pending a motion to dismiss on qualified immunity grounds).  The Defendants, however, do not raise a qualified immunity defense.  <u>See</u> Motion at 1.  The Defendants also cite several cases involving situations, unlike the Plaintiffs' circumstances, in which the nonmovant requires or desires no discovery.  <u>See</u> <u>Roybal v. United States</u>, 2014 WL 12617288, at *1-2 (granting a discovery stay when a defendant filed a dispositive motion raising a statute-of-limitations defense); <u>Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.</u>, 201 F.R.D. at 3 (noting that "Plaintiffs do not contend -- nor did they at the April 30 hearing -- that they would be unable to file their oppositions to defendants' motions to dismiss in the absence of such discovery," and stating that a trial court "ordinarily should not stay discovery which is necessary to gather facts in order to defend against [a] motion [to dismiss]" (citing <u>Feldman v. Flood</u>, 176 F.R.D. 651, 652 (M.D. Fl. 1997)(Corrigan, M.J.)); <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 84 F.R.D. at 282 ("If [the Department of Energy's] characterizations of the issues Coastal is pursuing are correct, and they are in fact irrelevant to the question of jurisdiction, postponement of discovery would be appropriate.").  Those cited cases that involve neither qualified immunity nor a nonmovant requiring no discovery ignore the Tenth Circuit's mandate to permit at least limited discovery for nonmovants who require such discovery.  <u>See</u> <u>Deschine v. United States</u>, 2014 WL 11512631, at *1 (granting a discovery stay pending a motion to dismiss arguing that an individual was not an employee of the United States for the FTCA's purposes).  The Court, accordingly, denies the Defendants' Motion.

**IT IS ORDERED** that the Defendant's Emergency Motion for a Partial Stay of Discovery and Memorandum in Support, filed November 6, 2018 (Doc. 66), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and parties*:

A. Blair Dunn
Dori Ellen Richards
Western Agriculture Resource and Business Advocates, LLP
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs Catherine C De Baca and Gary Cianchetti*

Mary Louise Boelcke
Mark Dow
Bauman Dow & Stambaugh, P.C.
Albuquerque, New Mexico

--and--

Thomas L. Tosdal
Tosdal Law Firm
Solana Beach, California

    *Attorneys for the Plaintiffs Gerald Ohlsen, Janet Youngberg, James Farrington, Thomas Derochie, Caryn DeRochie, William McClellan, Donna McClellan, Nancy Higgins, Vernon Cobb, Binda Cobb, Christine Wood, Mark Thompson, Donald Giles, Bonnie Long, Thomas Bragg, Diane Bragg, Ernest Vigil, Frieda Vigil, Brad Wosick, Johnny Luna, Deanne Luna, Marlene Barber, Michael McDaniel, Paula Wilten, Martin Valencia, Vested Interest, LLC, Janice Farrington, Ken Kugler, Debbie Kugler, David Lee, Diana Lee, Joseph Lee, Alicia Lee, Ed Mortensen, Katherine Mortensen, David Coulter, Matt Urban, Marie Urban, and Olympia Salas*

Mark Grotefeld
Anooj Manu Thakrar
Kevin Scott Mosley
Cristina Gonzalez
Grotefeld Hoffmann
Austin, Texas

    *Attorneys for the Plaintiffs State Farm Fire & Casualty Co., Safeco Insurance Company of America, and Allstate Insurance Company*

David Lloyd Sais

    *Plaintiff pro se*

Lucille Sais

    *Plaintiff pro se*

Thomas Apodaca

    *Plaintiff pro se*

Christine Apodaca

    *Plaintiff pro se*

Vladislav Kushnir
VB Kusnir, LLC
Trevose, Pennsylvania

    *Attorney for the Plaintiff Homesite Indemnity Company*

Christopher F. Jeu
Ruth Fuess Keegan
Roberto D. Ortega
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Defendants United States of America, United States Department of Agriculture, United States Forest Service, Natural Resources Conservation Service, Bureau of Indian Affairs, and FNU Does*